IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES TSTINIC, # M24225,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-cv-00868-MJR ) |
| **VENERIO SANTOS,** **LISA KREBS,** **KIM MARLOW,** **LOUIS SHICKER, and** **WEXFORD HEALTH,** | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff James Tstinic, an inmate in Sheridan Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on his medical care while housed in Centralia Correctional Center, and how his related grievances were handled.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under Section 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Prior to his incarceration Plaintiff Tstinic had two back surgeries (laminectomies), but he continued to experience low back pain radiating down his leg. A 2008 MRI revealed marked degenerative disc disease and disc abnormalities at levels L4-S1 (*see* Doc. 1-1, p. 1). In mid-2012, Plaintiff was seen by Centralia physician Dr. Venerio Santos several times for complaints of back pain, as well as related leg pain and numbness in his foot. Without testing

Plaintiff or securing medical records or imaging, Dr. Santos concluded that Plaintiff was plagued by arthritis. Dr. Santos did nothing to alleviate Plaintiff's pain or other symptoms. Santos also treated what Plaintiff surmised was a bleeding hemorrhoid with only an ointment, instead of performing the prostate exam Plaintiff thought was warranted.

September 2012 x-rays did confirm significant degenerative disc disease and severe loss of disc height with subchondral sclerosis caused by osteoarthritis (Doc. 1-1, pp. 15-16; Doc. 1-4, p. 23). Plaintiff continued to be seen by Dr. Santos through early 2013, without relief for his pain and other back symptoms. During much of this time, doctor and patient disagreed over which medication was appropriate—with Dr. Santos often becoming rude, upset and threatening, and stressing that *he* was the doctor. Plaintiff's multiple requests for Ultram were denied, despite Plaintiff explaining that he had previously been prescribed Ultram with good results, and despite the ineffectiveness of the other medications prescribed by Dr. Santos. At various times, Dr. Santos prescribed Indomethacin (which Santos failed to warn would cause severe dizziness), Medrol and Prednisone—none were effective. In November 2012, Ultram was prescribed, but it only helped a little, prompting Plaintiff to request a narcotic pain reliever.

Plaintiff thought he had arranged to be able to stay in the health care unit for a few days so that he could receive the narcotic drug and be monitored, while not missing out on his classes and impacting his good time credits. However, Dr. Santos would not agree to a pre-set window of time; instead, Santos wanted Plaintiff confined to the health care unit for an indefinite period—which Plaintiff considered to be akin to solitary confinement. When Plaintiff declined the offer, Dr. Santos merely increased the dosage of Ultram. Plaintiff last saw Dr. Santos in February 2013, when Plaintiff returned to Dr. Santos complaining that his medication was not effective and requesting an MRI. Dr. Santos refused to order an MRI and told Plaintiff

that he would not receive any other medication. Plaintiff characterizes Dr. Santos as being a witchdoctor, negligent and deliberately indifferent.

In an effort to secure proper medical treatment and pain relief, Plaintiff lodged multiple grievances, and he wrote and spoke to various prison officials. In particular, Plaintiff takes issue with Lisa Krebs, who is a registered nurse and serves as the medical director at Centralia, Dr. Louis Shicker, the director of health care for the Illinois Department of Corrections, and Wexford Health, which is the contract health care provider for the Department of Corrections. Plaintiff also complains that his efforts to secure treatment and pain relief were stymied by his counselor, Kim Marlow, through whom all grievances must pass. Marlow was consistently tardy in process grievances.

With respect to Wexford Health, a letter dated February 18, 2013, indicates that in response to a letter from Plaintiff, his care was reviewed at the prison, and by regional medical directors (Doc. 1-4, p. 10). Plaintiff was instructed to pursue further concerns through the sick call process and prison grievance procedures. (Doc. 1-4, p. 10).

At the institutional level, Krebs "brushed off" Plaintiff's complaints about Dr. Santos by merely redirecting Plaintiff to the health care unit. Even after Plaintiff provided Krebs with medical information, she merely opined that Santos was treating Plaintiff properly. Although it was Krebs who proposed that Plaintiff could work around his class schedule and receive narcotic pain medication during a brief stay in the health care unit, Plaintiff deems her a liar, since that plan fell through. Plaintiff also asserts that Krebs was negligent in not securing the correct prescription records from an outside pharmacy, which would have shown Plaintiff's medication history prior to his incarceration. Even when records were received, Krebs still did

nothing to secure the proper medication (*see* Doc. 1-3, p. 22). It is further alleged that Krebs, working with Dr. Santos, was deliberately indifferent to Plaintiff's medical needs.

Dr. Shicker, medical director for the IDOC, did use some of his medical training to assess Plaintiff's request to be prescribed something similar to the combination of Percocet, Norco and Methadone, that Plaintiff contended he had been prescribed prior to his incarceration. Dr. Shicker opined that that was an "extremely potent combination of pain medication' that, in his experience, was "rarely used" (Doc. 1-4, p. 16). Although Shicker was going to try to obtain Plaintiff's medical and pharmacy records, he left the clinical decisions regarding pain management to Dr. Santos (Doc. 1-4, p. 16). After reviewing Plaintiff's records, Shicker did make some recommendations for "Wexford senior medical staff" "to consider," but he again left it to the clinical staff at the facility (Doc. 1-4, p. 28). At that point, April 9, 2013, Shicker washed his hands of the matter, directing Plaintiff to register any further dissatisfaction through the grievance process.

All Defendants are sued in their official capacities (Doc. 1, pp. 1-4). Plaintiff seeks only "monetary compensation" (Doc. 1, p. 24).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Although the complaint refers repeatedly to "negligence," the allegations are also characterized as "deliberate indifference" at one point (*see* Doc. 1, p. 17). In recognition of Plaintiff's *pro se* status, and in consideration of the nature of the factual allegations, the Court construes the complaint as asserting claims of negligence and deliberate indifference.

> **Count 1:** Dr. Santos, Centralia Health Care Administrator Krebs, IDOC Health Care Director Shicker and Wexford Health were negligent, and deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment; and
>
> **Count 2:** Counselor Kim Marlow was negligent and deliberately indifferent when she delayed processing Plaintiff's grievances regarding his health care, thereby delaying his receipt of proper care, all in violation of the Eighth Amendment.

## Discussion

### Official Capacity Claims

Section 1983 creates a cause of action based on personal liability. 42 U.S.C. § 1983. Plaintiff's first problem is that the Defendants are all sued in their official capacities for monetary damages. Although official capacity claims may be brought under Section 1983 for purposes of securing injunctive relief (s*ee Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001)), the complaint does not seek injunctive relief. Otherwise, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Furthermore, the Eleventh Amendment bars suits against states—and by extension official capacity claims—in federal court for money damages. *See Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001). Therefore, all official capacity claims must be dismissed.

The complaint would appear to fail on its face. However, in consideration of Plaintiff's *pro se* status, and in recognition of the fact that the allegations in the complaint so clearly present individual capacity claims, the complaint will be construed as also asserting individual capacity claims.

**Negligence**

The complaint suffers from a second obvious flaw: this action is brought pursuant to Section 1983, yet it asserts claims based on the Defendants' alleged negligence. Section 1983 "creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States ... of any rights, privileges, or immunities secured by the Constitution and laws.' " *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). A defendant can never be held liable under Section 1983 for negligence, or even gross negligence. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). Therefore, all claims of negligence in Counts 1 and 2 must be dismissed with prejudice.

**Count 1**

Count 1 is brought against treating physician Dr. Santos, Centralia Health Care Administrator Krebs, IDOC Health Care Director Shicker and Wexford Health, for deliberate indifference to Plaintiff's serious health needs—his bad back.[1]

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials violate this proscription when they act with deliberate indifference to the serious medical needs of an inmate. *Farmer v. Brennan,* 511 U.S. 825, 835 (1994); *Estelle v. Gamble,* 429 U.S. (1976). To succeed on a deliberate

---

[1] Plaintiff's allegation that Dr. Santos failed to properly treat Plaintiff's hemorrhoid are not deemed to be a part of any Eighth Amendment claim. Plaintiff may consider any such claim dismissed without prejudice. The complaint describes, at most, negligence with respect to treatment of Plaintiff's hemorrhoid. Dr. Santos offered treatment, just not the treatment Plaintiff preferred.

indifference claim, a plaintiff must (1) demonstrate that his medical condition is "objectively, sufficiently serious," and (2) demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (internal quotation marks omitted); *see also Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1072 (7th Cir. 2012).

A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010). Therefore, Plaintiff's pain and back condition appear to constitute a serious medical need. With that said, a prisoner's mere disagreement over the proper course of treatment is not an Eighth Amendment violation. *See Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010); *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008). Some of Plaintiff's allegations could be characterized as disagreements over the proper course of treatment. However, blatantly inappropriate treatment, woefully inadequate action, or inaction can violate the Eighth Amendment. *See Reed v. McBride,* 178 F.3d 849, 854 (7th Cir.1999). Similarly, erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference. *See Gayton v. McCoy,* 593 F.3d 610, 623 (7th Cir. 2010); *Jones v. Simek,* 193 F.3d 485, 490 (7th Cir. 1999). Dr. Santos's treatment decisions could be deemed so erroneous or inappropriate as to violate the Eighth Amendment. Therefore Count 1 can proceed against Dr. Santos.

Because a Section 1983 claim must be based upon personal liability and fault, the doctrine of *respondeat superior* is inapplicable. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). However, "[s]upervisory liability will be found … if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State*

*Police,* 251 F.3d 612, 651 (7th Cir. 2001). Nevertheless, ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007). Thus, officials like Centralia Health Care Administrator Krebs and IDOC Health Care Director Shicker who were not actually involved in treatment decisions would usually not face liability. In this particular situation, Krebs, who is a registered nurse, and Shicker, who is a physician, both appear to have stepped beyond their roles as administrators and become involved in the treatment decisionmaking process. Therefore, they will not be dismissed at this juncture.

Wexford Health, however, will be dismissed. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n. 6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a Section 1983 action). Plaintiff makes no allegation that any individual defendant acted or failed to act as a result of an official policy espoused by Wexford Health. Therefore, Defendant Wexford Health shall be dismissed without prejudice.

With all that said and done, the Eighth Amendment medical deliberate indifference claim in Count 1 shall proceed against Defendants Santos, Krebs and Shicker in their individual capacities for monetary damages.

**Count 2**

Count 2 alleges that Counselor Kim Marlow was negligent and deliberately indifferent when she delayed processing Plaintiff's grievances regarding his health care, thereby delaying his receipt of proper care, all in violation of the Eighth Amendment. The mishandling or failure to respond to grievances does not violate the Constitution. *See Owens v. Hinsley,* 635

F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Count 2 against Defendant Marlow shall be dismissed with prejudice.

### Pending Motions

Also before the Court is Plaintiff's motion for service of summons and the complaint at government expense (Doc. 6). Because Plaintiff was granted leave to proceed as a pauper (Doc. 9), and in accord with 28 U.S.C. § 1915(d), Plaintiff's motion (Doc. 6) shall be granted.

Plaintiff's motion for appointment of counsel (Doc. 5), will be construed as a motion for the recruitment of counsel and shall be referred to United States Magistrate Judge Stephen C. Williams for further consideration.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 2** fails to state a claim upon which relief can be granted and is **DISMISSED with prejudice** in all respects; accordingly, Defendant **KIM MARLOW** is **DISMISSED from this action.**

**IT IS FURTHER ORDERED** that all claims in **COUNT 1** are against Defendant **WEXFORD HEALTH**; **WEXFORD HEALTH** is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that **COUNT 1** shall proceed against Defendants **VENERIO SANTOS**, **LISA KREBS** and **LOUIS SHICKER** in their individual capacities for monetary damages. Negligence claims in Count 1 are **DISMISSED with prejudice**. Official capacity claims in Count 1 are **DISMISSED without prejudice**.

**IT IS HEREBY ORDERED** that Plaintiff's motion for service of summons and the complaint at government expense (Doc.6) is **GRANTED**. The Clerk of Court shall prepare for Defendants **VENERIO SANTOS**, **LISA KREBS** and **LOUIS SHICKER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, including ruling on Plaintiff's motion for appointment of counsel (Doc. 5), which is construed as a motion for recruitment of counsel.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: September 13, 2013**

                                                                  s/ *Michael J. Reagan*
                                                                    **MICHAEL J. REAGAN**
                                                                    **UNITED STATES DISTRICT JUDGE**